**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JAMES BROWN,**

                                        **Plaintiff,**

            v.                                    **5:11-CV-668**
                                                      **(FJS/ATB)**

**CITY OF SYRACUSE, SYRACUSE**
**POLICE DEPARTMENT, OFFICER**
**JASON WELLS, in his individual and**
**official capacity, and OFFICER**
**PATRICIA SARGENT, in her**
**individual and official capacity,**

                                          **Defendants.**
_____

**APPEARANCES**                                  **OF COUNSEL**

**FINOCCHIO & ENGLISH**           **TRICIA M. DORN, ESQ.**
430 East Genesee Street
Suite 600
Syracuse, New York 13202
Attorneys for Plaintiff

**CITY OF SYRACUSE**               **CATHERINE ENA CARNRIKE, ESQ.**
**CORPORATION COUNSEL**      **AIMEE M. PAQUETTE, ESQ.**
233 East Washington Street
Room 301 City Hall
Syracuse, New York 13202
Attorneys for Defendants

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Currently before the Court is Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See* Dkt. No. 19-9.[1]

**II. BACKGROUND**

On June 25, 2010, at approximately 3:48 a.m., Defendants Patricia Sargent and Jason Wells responded to a domestic violence call at 814 Turtle Street, Syracuse, New York. *See* Dkt. No. 19-8 at ¶ 1; Dkt. No. 26 at ¶ 1. Plaintiff told Defendants Sargent and Wells that Justin Carbone ("Carbone"), his then-boyfriend and roommate, threatened him with a knife during a verbal and physical altercation. *See* Dkt. No. 19-8 at ¶ 4; Dkt. No. 19-4 at 54:2-14. Defendants Sargent and Wells spoke with Plaintiff, Carbone, and Ken Williams, a witness to the altercation, and ultimately did not to arrest Carbone. *See* Dkt. No. 19-8 at ¶ 8. Defendants Sargent and Wells released Plaintiff and Carbone from custody; and, as Plaintiff was walking back to his residence, he flipped Carbone the middle finger and told him to "fuck off." *See id.* at ¶ 11; Dkt. No. 26 at ¶ 11. Plaintiff admits that he was very angry that Carbone had just become romantically involved with another man and that Defendants Sargent and Wells "threatened" to arrest him because he "defended" himself. *See* Dkt. No. 19-8 at ¶ 14; Dkt. No. 26 at ¶ 14.

Defendants Sargent and Wells instructed Carbone to leave the residence for the evening. *See* Dkt. No. 19-8 at ¶ 12. As Carbone waited for a friend to pick him up, Plaintiff allegedly engaged in a loud, expletive-filled conversation about Carbone on his cellular phone outside his residence. *See id.* at ¶ 13. Due to the late hour (approximately 4:00 a.m.), Defendants Sargent

---

[1] To avoid confusion, the Court's citations to specific page numbers reference the page numbers that the Court's electronic filing system automatically generates.

and Wells instructed Plaintiff to go inside his residence. *See id.* at 15. Once inside, Plaintiff allegedly demonstrated threatening and disobedient behavior, which caused Defendants Wells and Sargent to arrest him for obstructing government administration in the second degree and resisting arrest. *See id.* at ¶¶ 17-19. On January 26, 2011, a jury acquitted Plaintiff of both charges. *See id.* at ¶ 22; Dkt. No. 22-1 at ¶ 18.

On June 14, 2011, Plaintiff commenced the instant civil action under 42 U.S.C. § 1983 against the City of Syracuse ("Defendant City"), the Syracuse Police Department, and Defendants Sargent and Wells. *See* Dkt. No. 1. Plaintiff contends that Defendants Sargent and Wells (1) used excessive force and committed assault and battery, *see id.* at ¶¶ 11-15; (2) falsely arrested and imprisoned him, *see id.* at ¶¶ 18-19; and (3) acted pursuant to Defendant City's policy when arresting him and using excessive force, *see id.* at ¶¶ 22-24, all in violation of the Fourth Amendment to the United States Constitution.

On August 29, 2012, Defendants moved for summary judgment.[2] *See* Dkt. No. 19-9.

### III. DISCUSSION

**A.    Syracuse Police Department as a Defendant**

"'Under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality, and therefore,

---

[2] Defendants maintain that Plaintiff filed his response to their motion for summary judgment three days late and that, therefore, per Local Rule 7.1(b)(3), the Court should disregard his response. *See* Dkt. No. 29-4 at 3; *see also* N.Y.N.D. L. R. 7.1(b)(3) (stating "[t]he Court shall not consider any papers required under this Rule that are not timely filed or are otherwise not in compliance with this Rule unless good cause is shown"). Plaintiff's counsel explains that she incorrectly calendared the due date for Plaintiff's opposition papers. *See* Dkt. No. 29-4 at 4. In exercising its discretion, the Court will consider Plaintiff's response but reminds Plaintiff's counsel of Local Rule 7.1(b)(3) and advises counsel that the Court will not consider any late filings in the future.

3

cannot sue or be sued.'" *Jenkins v. Liadka*, No. 5:10-CV-1223, 2012 U.S. Dist. LEXIS 130808, *15-*16 (N.D.N.Y. Sept. 13, 2012) (quotation omitted). "Because the Syracuse Police Department is merely an administrative arm of the City of Syracuse, it is not a proper defendant in this case. The real party of interest is the City of Syracuse itself." *Id.* at 30. Accordingly, the Court dismisses Syracuse Police Department as a Defendant.

**B.     Standard of review**

A district court should grant summary judgment "if the pleadings, affidavits, and disclosures that form the record establish that 'there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Consol. Risk Servs. Inc., v. Auto. Dealers WC Self Ins. Trust*, No. 1:06-CV-871, 2010 U.S. Dist. LEXIS 68401, *9-*10 (N.D.N.Y. July 9, 2010) (quoting Fed. R. Civ. P. 56(c)(2)). Summary judgment, however, is not warranted "'if the evidence is such that a reasonable jury could return a verdict'" for the non-moving party. *Id.* (quoting *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178 (2d Cir. 2008)). "In deciding a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor." *Id.* (citation omitted).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, then the non-moving party must identify "'specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation and footnote omitted). The non-

moving party, however, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted); *see also Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) (stating that "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact" (citation omitted)).

C.  **Excessive force, assault, and battery claim**

"The Fourth Amendment protects against the use of excessive force by the police during an arrest." *Farrow v. City of Syracuse*, No. 5:12-CV-1401, 2012 U.S. Dist. LEXIS 166815, *9 (N.D.N.Y. Sept. 17, 2012) (citation omitted). To establish a claim of excessive force under 42 U.S.C. § 1983, a plaintiff bears the burden of showing that, in light of the facts and circumstances confronting the arresting officers, the amount of force was objectively unreasonable.[3] *See Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004). "This determination 'requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Dukes v. Troy Hous. Auth.*, No. 1:08-CV-479, 2011 U.S. Dist. LEXIS 34483, *22-*23 (N.D.N.Y Mar. 30, 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). "Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no

---

[3] "Assault and battery claims under New York law are analogous to excessive force claims under the Fourth Amendment. . . . Indeed, courts evaluate assault and battery claims under New York law and excessive force claims under the Fourth Amendment pursuant to the same standards. . . ." *Dukes v. Troy Hous. Auth.*, No. 1:08-CV-479, 2011 U.S. Dist. LEXIS 34483, *22 (N.D.N.Y Mar. 30, 2011) (internal citations omitted).

reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *See Amnesty Am.*, 361 F.3d at 123 (citation omitted).

### *1. Defendant Sargent*

After careful consideration of the facts and circumstances in this case, the Court finds that Plaintiff has raised questions of fact regarding the objective reasonableness of the force Defendant Sargent used to take him into custody. *See Dukes*, 2011 U.S. Dist. LEXIS 34483, at *4, *23 (denying summary judgment because material facts were disputed regarding whether a police officer's force was objectively unreasonable where he allegedly pepper sprayed the plaintiff, "slammed him into the front of his car," and "kneed[ed] [the p]laintiff in the back and 'snapped' his arm behind his back"). For instance, whether Plaintiff allegedly approached Defendant Sargent in an aggressive manner is an issue of fact for the jury to decide. Additionally, a review of the record shows that Plaintiff's and Defendants' versions of the events on June 25, 2010, sharply differ.

According to Defendants, as Defendant Sargent entered Plaintiff's residence and as he stood before the front door, Plaintiff walked towards her in an aggressive manner, stating that this was "his house" and he could "leave whenever he wanted to." *See* Dkt. No. 19-9 at 12. Allegedly threatened by Plaintiff's behavior, Defendant Sargent pushed him back. *See id.* at ¶ 8. Plaintiff allegedly recovered quickly and advanced towards her a second time. *See id.* Defendant Sargent again pushed Plaintiff back; and he allegedly stumbled onto a coffee table. *See id.* Thereafter, Defendant Sargent claims that she told Plaintiff that he was under arrest; however, he got up and advanced towards her for a third time. *See id.* This time, Defendant Sargent allegedly punched Plaintiff once on the right side of his face with her left hand. *See id.*

Defendant Sargent alleges that she did not punch Plaintiff straight in the face and that her hand glazed off the right side of his head. *See id.* Next, Defendants Wells and Sargent claim that they told Plaintiff to put his hands behind his back; however, because he failed to comply immediately, Defendant Sargent placed him in a headlock while Defendant Wells handcuffed him. *See id.*

Conversely, according to Plaintiff, Defendants Sargent and Wells entered his home uninvited and demanded that he hang up the telephone. *See* Dkt. No. 22 at 8. Plaintiff claims that he stated to his friend on the telephone, "Can you believe this, I'm the victim here. I have a knife pulled on me and this cop wants to be a bitch to me." *See id.* Defendant Sargent allegedly knocked the telephone out of Plaintiff's hand and yelled, "What did you call me? What the fuck did you call me?" *See id.* As Plaintiff bent down to pick up his telephone, Defendant Sargent allegedly pushed him, causing him to stumble backwards against a coffee table. *See id.* at 8-9. As Plaintiff attempted to stand, Defendant Wells allegedly grabbed and placed his hands behind his back; and Defendant Sargent punched him in the face approximately five to six times. *See id.* at 9. Defendant Sargent allegedly broke three bones in Plaintiff's face. *See id.*

Accordingly, because clear issues of material fact are in dispute, the Court denies the motion for summary judgment as to Plaintiff's excessive force claim against Defendant Sargent.

### 2. *Defendant Wells*

The Court concludes that Defendant Wells' actions were objectively reasonable since Plaintiff admitted that Defendant Wells did not hit, kick, punch, shove, or otherwise physically harm him. *See* Dkt. No. 22-1 at ¶ 16; *see also Cooper v. City of New Rochelle*, No. 11 Civ. 69, 2013 U.S. Dist. LEXIS 35070, *57 (S.D.N.Y. Feb. 26, 2013) (dismissing an excessive force claim, in part, because plaintiffs admitted that a defendant-police officer "'did not punch or choke

plaintiff Smith'" (quotation omitted)). Accordingly, because no reasonable fact finder could conclude that Defendant Wells' conduct was objectively unreasonable, the Court grants Defendants' motion for summary judgment with respect to Plaintiff's excessive force, assault, and battery claim against Defendant Wells. *See Amnesty Am.*, 361 F.3d at 123.

**D.     False arrest and imprisonment claim**

To establish a false arrest or false imprisonment, the plaintiff must show, by a preponderance of the evidence, that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Danford v. City of Syracuse*, No. 5:09-CV-0307, 2012 U.S. Dist. LEXIS 130026, *26 (N.D.N.Y. Sept. 12, 2012) (citation omitted)); *cf. Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996) (stating that false arrest and false imprisonment claims are substantially the same in § 1983 actions (citations omitted)).

Regarding the fourth element, which is at issue here, if a police officer has probable cause to arrest, then the confinement is privileged. *See Weyant,* 101 F.3d at 852 (quotation omitted). This means, "probable cause is an absolute defense to a claim for false arrest." *Defrancesco v. Gilham*, No. 1:06-CV-1070, 2009 U.S. Dist. LEXIS 102799, *8 (N.D.N.Y. Nov. 4, 2009) (citation omitted). "When an arrest is made without a warrant and probable cause is raised as a defense, the government bears the burden to demonstrate the existence of probable cause." *Danford*, 2012 U.S. Dist. LEXIS 130026, at *26 (citation omitted). "An officer has probable cause to arrest when he or she has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing the crime.'" *Jaegly v. Couch,* 439

8

F.3d 149, 152 (2d Cir. 2006) (quotation and other citation omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers, . . . or may require a trial if the facts are in dispute. . . ." *Weyant*, 101 F.3d at 852 (internal citations omitted).

In this case, Plaintiff undisputedly satisfies the first three elements of a false arrest and imprisonment claim. Genuine issues of material fact, however, exist regarding whether Defendants had probable cause to arrest Plaintiff. For instance, whether Defendants Sargent and Wells had Plaintiff's permission to enter his residence is disputed, as is Plaintiff's behavior once he moved his telephone conversation inside his home. *Compare* Dkt. No. 19-9 at 7-8; Dkt. No. 19-8 at ¶¶ 16-17 *with* Dkt. No. 22 at 8-9; Dkt. No. 22-1 at ¶¶ 13-15.

Accordingly, because the reasonableness of Defendant Sargent's and Wells' beliefs regarding probable cause for Plaintiff's arrest depends upon whether a fact finder would credit Plaintiff's or Defendants' version of the disputed facts, the Court denies Defendants' summary judgment motion on the false arrest and imprisonment claim.

**E.     Qualified immunity**

In this case, Defendants argue that Defendants Wells and Sargent are entitled to qualified immunity on Plaintiff's excessive force and false arrest and imprisonment claims. Conversely, Plaintiff responds that Defendants Wells and Sargent are not entitled to qualified immunity because they undisputedly entered his residence without a warrant or under exigent circumstances. *See* Dkt. No. 22 at 18.[4]

---

[4] Plaintiff also contends that Defendant Wells is not entitled to qualified immunity because he abandoned his affirmative duty to intervene in order to protect Plaintiff from Defendant Sargent infringing on his constitutional rights. *See* Dkt. No. 19-9 at 18-19. Since Plaintiff first raised this claim in his opposition papers to the instant motion, the Court will not

Qualified immunity shields police officers "'from liability for civil damages if their actions were objectively reasonable, as evaluated in the context of legal rules that were "clearly established" at the time'" in question. *Loria v. Gorman,* 306 F.3d 1271, 1281 (2d Cir. 2002) (quotation and other citation omitted). "Since qualified immunity is an affirmative defense, the defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at that time." *Varrone v. Bilotti*, 123 F.3d 75, 78 (2d Cir. 1997) (citation omitted).

"The qualified immunity determination consists of two steps, which a court may consider in either order." *Dukes*, 2011 U.S. Dist. LEXIS 34483, at *28 (citation omitted). "First, the court must determine whether, in the light most favorable to the party asserting the injury, the facts show that the officer's conduct violated a constitutional right. . . . Second, if the court determines that the officer did violate a constitutional right, then the court must determine whether the right was clearly established at the time it was infringed. . . ." *Frobel v. Cnty. of Broome*, 419 F. Supp. 2d 212, 220 (N.D.N.Y. 2005) (internal citations omitted).

If the officer's conduct violated a constitutional right, then courts "analyze the objective reasonableness of the officer's belief in the lawfulness of his actions." *Loria*, 306 F.3d at 1281 (citation omitted). "The objective reasonableness test is met – and the defendant is entitled to immunity – if 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir. 1995) (quotation and other

---

address this claim. *See Mahmud v. Kaufmann*, 607 F. Supp. 2d 541, 555 (S.D.N.Y. 2009) (stating that, "[g]enerally, courts will not consider, on a motion for summary judgment, allegations that were not pled in the complaint and raised for the first time in opposition to a motion for summary judgment" (citing *Southwick Clothing LLC v. GFT (USA) Corp.*, 2004 U.S. Dist. LEXIS 25336, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion."))) (other citation omitted).

citation omitted). If the officer's "belief was not objectively reasonable, qualified immunity offers him no solace and the plaintiff's claims must be allowed to proceed." *Loria*, 306 F.3d at 1282 (citation omitted); *see also Weyant*, 101 F.3d at 858 (stating, "[q]ualified immunity does not protect those who are 'plainly incompetent or those who knowingly violate the law'" (quotation and citation omitted)).

As detailed above, a multitude of factual issues exists regarding whether Defendant Sargent violated Plaintiff's Fourth Amendment right to be free from excessive force and whether Defendants Sargent and Wells violated his right to be free from false arrest and imprisonment. Indeed, the reasonableness of Defendants Sargent's and Wells' beliefs that their actions were objectively reasonable and legally compliant hinges on whether a fact finder would credit Plaintiff's or Defendants' version of the facts. Since the parties' versions of what occurred on the night in question sharply differ, the Court cannot resolve the issue of Defendants Sargent's and Wells' qualified immunity as a matter of law.

Accordingly, the Court denies Defendants' motion for summary judgment on the grounds of qualified immunity.

**F.** *Monell* **claim**

"Pursuant to *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), and its progeny, a municipality cannot be held liable pursuant to section 1983 under a theory of *respondeat superior*." *Dukes*, 2011 U.S. Dist. LEXIS 34483, at *31 (citing [*Monell*, 436 U.S.] at 691) (other citation omitted). "A plaintiff making a '*Monell'* claim against a municipality must establish three elements: '(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Defrancesco*, 2009

U.S. Dist. LEXIS 102799, at *14 (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)); *see also Nash v. Vill. of Endicott*, No. 8:08-CV-541, 2010 U.S. Dist. LEXIS 99509, *11 (N.D.N.Y. Sept. 22, 2010) (stating that, "to establish municipal liability, the policy must actually **cause** the violation of constitutional rights; it must be the moving force behind the violation" (citing *Monell*, 436 U.S. at 692)). Importantly, "there must be a 'direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Dukes*, 2011 U.S. Dist. LEXIS 34483, at *31 (quotation omitted). "It is well-settled that a plaintiff may establish this required causal link by showing that a defendant was deliberately indifferent to the training . . . of its employees." *Id.* (citation omitted).

In this matter, Defendants assert that Defendant City is entitled to summary judgment because there is no evidence establishing municipal liability under 42 U.S.C. § 1983. *See* Dkt. No. 19-9 at 22-25. Specifically, Defendants argue that Plaintiff claims, without presenting supporting evidence, that Defendants Wells and Sargent illegally arrested him and used excessive force in furtherance of Defendant City's policy. *See id.* at 24. Defendants further challenge Plaintiff's argument that Defendant City inadequately trained Defendants Wells and Sargent, underscoring that Plaintiff failed to identify a deficiency in said training that deprived him of his constitutional rights. *See* Dkt. No. 29-4 at 17. Conversely, Plaintiff argues that Defendant City failed to train Defendants Sargent and Wells on federal constitutional rights and state laws, as evident by their statements and actions towards him on June 25, 2010. *See* Dkt. No. 22 at 20-21.

After reviewing the parties' papers, the record, and applicable case law, the Court finds that Plaintiff bases his claims against Defendant City solely on a theory of *respondeat superior*. *See Monell*, 436 U.S. at 691 (stating that a municipality cannot be held liable under § 1983 on a

*respondeat superior* basis). "Although [Defendants Sargent and Wells] ha[ve] discretion to arrest individuals in particular situations, it is not the case that their 'edicts or acts may fairly be said to represent official policy.'" *Diodati v. City of Little Falls*, No. 6:04-CV-446, 2007 U.S. Dist. LEXIS 4322, *8 (N.D.N.Y. Jan. 18, 2007) (quotation and other citation omitted). "At most, they are 'lower-level municipal employees to whom some authority has been delegated . . . .'" *Id.* (quotation omitted). Plaintiff also merely "outline[s] a single, detached incident of misconduct by [two] non-policy level officer[s that] in no way suggest[s] that municipal policymakers made a deliberate choice to turn a blind eye to unconstitutional conduct." *Dukes*, 2011 U.S. Dist. LEXIS 34483, at *32 (citations omitted).

Moreover, Plaintiff fails to raise questions of fact regarding the "direct causal link" between Defendant City's policy or custom and his Fourth Amendment deprivations. Plaintiff's "mere allegation that [Defendant City] failed to train [Defendants Sargent and Wells] properly is insufficient to establish a municipal custom or policy." *Neighbour v. Covert,* 68 F.3d 1508, 1512 (2d Cir. 1995) (citation omitted). Indeed, Plaintiff neglects to identify any deficiency in Defendant City's training, let alone a deficiency that rises to the level of deliberate indifference and deprives him of his constitutional rights.

Accordingly, because material facts are undisputed that Defendant City's alleged policy or custom was not "the moving force" behind Plaintiff's alleged constitutional injuries, the Court grants Defendants' motion for summary judgment on this ground.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant Syracuse Police Department is **DISMISSED** as a defendant in this case; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff's excessive force claim against Defendant Wells and his *Monell* claim against Defendant City and is **DENIED** in all other respects; and the Court further

**ORDERS** that Plaintiff's counsel shall initiate a telephone conference, using a professional conferencing service, with the Court and opposing counsel on **April 4, 2013,** at **9:30 a.m.** to schedule the trial of this matter.

**IT IS SO ORDERED**.

Dated: March 28, 2013
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge